**REVERSE, RENDER, and REMAND; and Opinion Filed May 15, 2013.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-00587-CV

**BETTER BUSINESS BUREAU OF METROPOLITAN DALLAS, INC., Appellant**

**V.**

**BH DFW, INC., Appellee**

### On Appeal from the 14th Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. DC-12-00921

## OPINION

Before Justices Moseley, Fillmore, and Myers
Opinion by Justice Fillmore

This accelerated interlocutory appeal arises from a breach of contract action brought by BH DFW, Inc. against the Better Business Bureau of Metropolitan Dallas, Inc. (the BBB). The BBB moved to dismiss the action pursuant to the Texas Citizens Participation Act (TCPA) which provides a means for dismissal of actions involving the exercise of certain constitutional rights. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001–.011 (West Supp. 2012). In a written order, the trial court denied the motion to dismiss.

In one issue, the BBB argues the trial court erred by denying the BBB's motion to dismiss. In its brief, BH DFW also challenges this Court's jurisdiction over this appeal. We conclude we have jurisdiction over this appeal and that the trial court erred by denying the BBB's motion to dismiss. We reverse the trial court's order, render judgment granting the

BBB's motion to dismiss pursuant to the TCPA, and remand this case to the trial court for further proceedings consistent with section 27.009(a) of the civil practice and remedies code.

## Background

The BBB, a nonprofit corporation founded in 1920, states that its goal and primary mission is to promote ethical business practices through voluntary self-regulation by businesses. The BBB provides several services to the public, including publication of consumer alerts, publication of business reviews that may contain a rating of the business on a scale from "A+" to "F," and complaint processing.

A business may also become "accredited" by the BBB if the business meets and maintains the standards developed by the Council of Better Business Bureaus (CBBB). An accredited business pays a fee to the BBB for accreditation review and monitoring and support of BBB services to the public. According to Christopher Burgess, the vice president and chief compliance officer of the BBB, the fee paid by a business does not entitle it to be accredited and a business may not buy accreditation.

The accreditation standards include eight principles, one of which is to "advertise honestly," with "adherence to established standards of advertising" as set out in the CBBB's Code of Advertising. The Code of Advertising, according to Burgess, is designed to promote truth, honesty, and accuracy in business selling practices, inform the public on matters of advertising and selling practices, and enhance customer trust and confidence in business. Further, the Code of Advertising indicates it is intended to provide guidance for advertisers to help ensure effective self-regulation in the public interest. According to Burgess, although the BBB applies the Code of Advertising to both accredited and non-accredited businesses, compliance with the Code of Advertising is one requisite for acquiring and maintaining

accreditation. Further, the BBB publishes business reviews to the public on both accredited and non-accredited businesses.

As relevant to this appeal, the CBBB's Code of Advertising provides that the advertiser bears primary responsibility to ensure its advertisements are truthful and non-deceptive. The Code of Advertising specifically addresses the subject of "Superlative Claims – Puffery," distinguishing objective, or factual, claims from subjective, or puffery, claims. It defines objective claims as those relating to "tangible qualities and performance values of a product or service which can be measured against accepted standards or tests." Because objective claims are statements of fact, "such claims can be proved or disproved and the advertiser should possess substantiation." Subjective claims, on the other hand, are "expressions of opinion or personal evaluation of the intangible qualities of a product or service." If such statements express individual opinions, statements of corporate pride, and promises, the statements may "sometimes be considered puffery and not subject to test of their truth and accuracy." However, according to the Code of Advertising, "[s]ubjective superlatives which tend to mislead should be avoided."

According to Burgess, compliance with the CBBB's Code of Advertising and other BBB accreditation standards is voluntary. However, the BBB conducts advertising reviews by monitoring local advertising for compliance with the Code of Advertising. When the BBB challenges an advertisement, it asks the advertiser to substantiate, modify, or discontinue the challenged advertising claims. If the advertiser does not comply with one of these requests, the BBB includes that information in its published review of that business. When an accredited business fails to substantiate, modify, or discontinue a challenged advertising claim, its accreditation can be suspended and revoked.

BH DFW builds residential swimming pools in the Dallas/Fort Worth area and is part of the Blue Haven Pool & Spa franchise group (Blue Haven). Between 1981 and December 13,

2010, BH DFW was designated an accredited business by the BBB. As an accredited business, BH DFW paid an annual fee of $1,000 to the BBB. It is undisputed that, for a number of years, BH DFW received an "A+" business rating from the BBB.

In the summer of 2010, BH DFW advertised its business in the Dallas Morning News. On July 19, 2010, Phylissa Landix, a business standards analyst for the BBB, sent a letter to BH DFW challenging several of the statements made in the advertisement. Landix requested BH DFW substantiate the challenged statements. If BH DFW could not do so, Landix requested that the claims be modified or discontinued. At issue in this appeal is the BBB's challenge to the statement that BH DFW is the "World's Largest!"

BH DFW responded by providing data from an industry trade journal, *Pool & Spa News*, indicating that Blue Haven had been the largest builder of residential swimming pools in the United States for a number of years and was one of only two companies that operated nationwide. BH DFW also asserted the scale of swimming pool construction in the United States is much larger than in any other country. BH DFW pointed out various factors, including climate, disposable income, access to financing, and availability of detached family homes on adequate-size plots of land, that limited a "swimming pool culture" from flourishing in other countries. BH DFW argued that a "world-wide comparison is not needed to show that there are no international builders of the scale of Blue Haven."

Landix disagreed that such a comparison was unnecessary. According to Landix, the term "World's Largest!" is an objective claim that can be measured against accepted standards or tests. She requested that BH DFW "provide a list of five countries known to have a significant pool-building presence and identify what you believe to be the largest pool company within each of the five countries, citing the source. Then identify how Blue Haven is larger."

–4–

BH DFW responded that Blue Haven had used "World's Largest!" as a logo for many years. It asserted the confirmation the BBB was demanding to support the logo "does not exist (trying to prove a negative)." It pointed out that no one had disputed Blue Haven's claim that it was the "World's Largest!" and there was no evidence to the contrary. It asserted it had "no way of confirming the pool building activities and business structure of all the nations of the world."

On December 13, 2010, the BBB revoked BH DFW's "Accredited Business" status and modified its business review of BH DFW, changing its rating from an "A+" to an "F." The reason given by the BBB on its website for the "F" rating was:

> Factors that *lowered* Blue Haven Pools' rating include: Advertising issues(s) found by BBB. BBB Accreditation was revoked because the business failed to honor its accreditation agreement with BBB.

(emphasis in original).

On January 25, 2010, BH DFW sued the BBB for breach of contract and sought a temporary injunction requiring the BBB to restore BH DFW's pre-dispute rating of "A+" and status as a BBB accredited business or, in the alternative, requiring the BBB to remove the "F" rating from its website and prevent the BBB from making any public mention of the "F" rating or the advertising dispute that led to the "F" rating. The BBB filed a motion to dismiss under the TCPA. The BBB argued it was entitled to dismissal because (1) BH DFW's claim is based on, related to, or in response to the BBB's exercise of its right of free speech, and (2) BH DFW could not establish by clear and specific evidence a prima facie case for each and every element of its claim. BH DFW responded that the BBB's business review constituted commercial speech and, therefore, was exempt from the TCPA and that it had established a prima facie case for each element of its breach of contract claim and its request for a temporary injunction. Both parties attached affidavits and other evidence to their pleadings.

At the hearing on the BBB's motion, the trial court orally denied the motion, stating:

–5–

> I think [chapter] 27 fairly clearly is related to the participation in government and I don't find that that is impacted by the suit by BH DFW, Inc., against the Better Business Bureau, and that is my ruling.

The trial court's written order denying the motion to dismiss, however, does not provide a basis for the ruling.

## Motion to Dismiss

In its sole issue on appeal, the BBB argues the trial court erred by denying the BBB's motion to dismiss under the TCPA because the BBB was exercising its right to free speech by communicating the BH DFW business review to the public. BH DFW responds that this Court has no jurisdiction over this interlocutory appeal. As to the merits of BBB's complaint, BH DFW argues the TCPA does not apply to the BBB's business review because (1) the communication was not in connection with government participation, and (2) as commercial speech, the review is exempt from the TCPA. BH DFW argues, in the alternative, that if the TCPA applies to the BBB's business review, BH DFW established by clear and specific evidence a prima facie case for each essential element of its claim.

### Standard of Review

The issue in this case is whether the TCPA applies to business ratings made by the BBB. We review questions of statutory construction de novo. *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011). When construing a statute, our primary objective is to ascertain and give effect to the Legislature's intent. TEX. GOV'T CODE ANN. § 312.005 (West 2005); *Molinet*, 356 S.W.3d at 411. "We look first to the statute's language to determine that intent, as we consider it 'a fair assumption that the Legislature tries to say what it means, and therefore the words it chooses should be the surest guide to legislative intent.'" *Leland v. Brandal*, 257 S.W.3d 204, 206 (Tex. 2008) (quoting *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 866 (Tex. 1999)); *see also Molinet*, 356 S.W.3d at 411. We consider the statute as a whole rather than

focusing upon individual provisions. *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). If a statute is unambiguous, we adopt the interpretation supported by its plain language unless such an interpretation would lead to absurd results. *Id.* (citing *Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care*, 145 S.W.3d 170, 177 (Tex. 2004)).

*Applicable Law*

The purpose of the TCPA is "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002. The TCPA is to be "construed liberally to effectuate its purpose and intent fully." *Id.* § 27.011(b).

The TCPA provides a means for a defendant, early in the course of a lawsuit, to seek dismissal of certain claims identified in the Act, including a legal action based on, relating to, or in response to a party's exercise of the right to free speech. *Id.* § 27.003(a). "Exercise of the right of free speech" is defined as "a communication made in connection with a matter of public concern." *Id.* § 27.001(3). "Matter of public concern" includes an issue related to (1) health or safety; (2) environmental, economic, or community well-being; (3) the government; (4) a public official or public figure; or (5) a good, product, or service in the marketplace. *Id.* § 27.001(7). Certain activities, however, are exempt from the statute. *Id.* § 27.010. As relevant to this case, the TCPA:

> [D]oes not apply to a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, or an insurance product or a commercial transaction in which the intended audience is an actual or potential buyer or customer.

*Id.* § 27.010(b).

A motion to dismiss under the TCPA must be filed not later than the sixtieth day after the date of service of the legal action unless the court extends the time for filing on a showing of good cause. *Id.* § 27.003(b). On the filing of a motion to dismiss pursuant to section 27.003(a), except as provided by section 27.006(b), all discovery in the legal action is suspended until the trial court has ruled on the motion to dismiss. *Id.* §§ 27.003(c), 27.006(b).[1]

A hearing on a motion to dismiss under section 27.003 must be set not later than the thirtieth day after the date of service of the motion unless the docket conditions of the trial court require a later hearing. *Id.* § 27.004. The trial court must rule on the motion not later than the thirtieth day following the date of the hearing. *Id.* § 27.005(a). The trial court must dismiss the action if the moving party shows, by a preponderance of the evidence, that the legal action is based on, relates to, or is in response to the party's exercise of the right of free speech, the right to petition, or the right of association, and the party bringing the legal action fails to establish by clear and specific evidence a prima facie case for each essential element of the claim in question. *Id.* § 27.005(b)–(c). In determining whether a legal action should be dismissed under the TCPA, "the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." *Id.* § 27.006(a). As discussed more fully below, section 27.008 addresses the right to appeal a trial court's ruling on a motion to dismiss under the TCPA. *See generally, id.* § 27.008.

Finally, where a court orders dismissal of a legal action under the TCPA, the court shall award to the moving party (1) court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require, and (2) sanctions

---

[1] Section 27.006(b) provides that "[o]n a showing of good cause, the court may allow specified and limited discovery relevant to the motion." *Id.* § 27.006(b).

against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions. *Id.* § 27.009(a).

*Jurisdiction*

We begin by addressing BH DFW's contention that we do not have jurisdiction over this interlocutory appeal. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004) ("[A] court must not proceed on the merits of a case until legitimate challenges to its jurisdiction have been decided."); *Jain v. Cambridge Petroleum Grp., Inc.*, No. 05-12-00677-CV, 2013 WL 1277888, at *1 (Tex. App.—Dallas Mar. 1, 2013, no pet.). Generally, courts of appeals have jurisdiction only over appeals from final judgments. *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001); *Jain*, 2013 WL 1277888, at *1. Further, the appellate courts have jurisdiction over interlocutory orders only when that authority is explicitly granted by statute. *Tex. A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007). Statutes authorizing interlocutory appeals are strictly construed because they are a narrow exception to the general rule that interlocutory orders are not immediately appealable. *CMH Homes v. Perez*, 340 S.W.3d 444, 447 (Tex. 2011).

Section 27.008 of the TCPA, entitled "Appeal," provides:

(a) If a court does not rule on a motion to dismiss under Section 27.003 in the time prescribed by Section 27.005, the motion is considered to have been denied by operation of law and the moving party may appeal.

(b) An appellate court shall expedite an appeal or other writ, whether interlocutory or not, from a trial court order on a motion to dismiss a legal action under Section 27.003 or from a trial court's failure to rule on that motion in the time prescribed by Section 27.005.

(c) An appeal or other writ under this section must be filed on or before the 60th day after the date the trial court's order is signed or the time prescribed by Section 27.005 expires, as applicable.

–9–

TEX. CIV. PRAC. & REM. CODE ANN. § 27.008. Relying on *Jennings v. Wallbuilder Presentations, Inc.*, 378 S.W.3d 519 (Tex. App.—Fort Worth 2012, pet. filed), BH DFW argues the statute does not provide for an interlocutory appeal from a trial court's written ruling on a motion to dismiss. We disagree.

In *Jennings*, the trial court held a hearing and expressly denied a motion to dismiss under the TCPA in a written interlocutory order. *Id.* at 522. "Relying on the plain language of section 27.008(a) as expressing legislative intent," the Fort Worth Court of Appeals concluded section 27.008(a) authorizes an interlocutory appeal only when the trial court fails to rule on the motion to dismiss, resulting in the motion being denied by operation of law. *Id.* at 524. Because the trial court in *Jennings* timely held a hearing and timely ruled on the motion to dismiss, the appellate court concluded section 27.008(a) did not provide for an interlocutory appeal. *Id*.

The Fort Worth Court of Appeals then considered whether section 27.008(b) provided for an interlocutory appeal from a written order by the trial court ruling on a motion to dismiss under the TCPA. It determined that section 27.008(b) mandates that an appellate court expedite an appeal or writ, whether interlocutory or not, but "does not contain language expressly creating a right of interlocutory appeal from a trial court's timely ruling denying a motion to dismiss." *Id.* at 524–25. Based on its determination that neither section 27.008(a) nor section 27.008(b) authorizes an interlocutory appeal from a timely ruling by the trial court denying the motion to dismiss, the Fort Worth Court of Appeals dismissed the appeal.

The Fourteenth District Court of Appeals, in a published order, declined to follow *Jennings*. *See Direct Commercial Funding, Inc. v. Beacon Hill Estates, LLC*, No. 14-12-00896-CV, 2013 WL 407029 (Tex. App.—Houston [14th] Jan. 24, 2013, order). The *Beacon Hill Estates* court noted that section 27.008(b) requires an appellate court to "expedite an appeal or other writ, whether interlocutory or not, from a trial court order on a motion to dismiss . . . or

from a trial court's failure to rule." *Id.* at *3. The court concluded that, "[i]f no interlocutory appeal is available when the trial court expressly rules on a motion to dismiss by signing an order, then the phrase 'from a trial court order on a motion to dismiss' appearing after the phrase 'whether interlocutory or not' is rendered meaningless." *Id*. at *3. The court further concluded the most natural reading of the phrase "whether interlocutory or not" is to read it as modifying both of the subsequent references to "a trial court order" and "a trial court's failure to rule." *Id*. Finally, the court noted that section 27.008(c) states an appeal "must be filed on or before the 60th day after the date the trial court's order is signed or the time prescribed by section 27.005 expires, as applicable."[2] *Id*. at *4. "If no signed order can be the subject of an interlocutory appeal, then the reference to the date on which 'the trial court's order is signed' also is superfluous." *Id*.[3]

We find the reasoning of the Fourteenth Court of Appeals in *Beacon Hill Estates* to be persuasive. Accordingly, we conclude this Court has jurisdiction under chapter 27 of the civil practice and remedies code over this interlocutory appeal of the trial court's order denying the BBB's motion to dismiss.

*Applicability of TCPA to the BBB's Business Review*

As relevant to this appeal, to be entitled to a dismissal under the TCPA, the BBB was required to establish by a preponderance of the evidence that BH DFW's breach of contract claim is based on, relates to, or is in response to the BBB's exercise of the right of free speech.

---

[2] Section 27.005(a) provides that a court must rule on a motion to dismiss under section 27.003 "not later than the 30th day following the date of the hearing on the motion." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(a).

[3] In *San Jacinto Title Services of Corpus Christi, LLC v. Kingsely Properties, LP*, No. 13-12-00352-CV, 2013 WL 1786632, at *4–5 (Tex. App.—Corpus Christi, Apr. 25, 2013, no pet. h.), the Corpus Christi Court of Appeals adopted the analysis in *Beacon Hill Estates* and concluded it had jurisdiction over an interlocutory appeal from the trial court's order denying a motion to dismiss under the TCPA.

Specifically, the BBB was required to establish by a preponderance of the evidence that its business review, including the "F" rating, was a communication made in connection with a good, product, or service in the marketplace. TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001(3), 27.001(7)(E).

The BBB offered evidence that its business reviews, including ratings, are made to assist the public in selecting reliable companies with which to transact business. BBB's business review of BH DFW indicated that BH DFW received an "F" rating based on "advertising issues(s)" found by the BBB. It specifically set out the challenges BBB had made to BH DFW's advertisement, the fact that three of the four challenges were resolved, and that BH DFW had failed to substantiate or modify the "World's Largest" claim to adhere to the BBB's advertising standards. The communication related to a good, product, or service in the marketplace and, therefore, under the statutory definition, related to a matter of public concern. Accordingly, the BBB established by a preponderance of the evidence that it was exercising its right to free speech by communicating to the public its business review of BH DFW that included the "F" rating.

BH DFW first argues the TCPA does not apply to the BBB's business review because the statute was not intended to protect activities that are not related to participation in government. BH DFW asserts the purpose of the TCPA is "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government . . . ." *Id.* § 27.002. BH DFW contends the use of the conjunctive "and" limits the applicability of the statute to only those covered activities that are exercised by a citizen while participating in government.

We are, however, required to read the statute as a whole and cannot focus on isolated provisions. *See TGS-NOPEC Geophysical Co.*, 340 S.W.3d at 439. While the statutory purpose stated in section 27.002 indicates one of the Legislature's purposes in enacting the TCPA was to

–12–

protect certain activities related to participation in government, it defined the protected activity of "exercising the right of free speech" to encompass much broader activity. Under the statute, the "exercise of the right of free speech" is defined as a communication made in connection with a matter of public concern. TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(3). A "matter of public concern" is statutorily defined to encompass five different subjects including, without any limitation to participation in government, an issue related to a good, product, or service in the marketplace. *Id.* § 27.001(7)(E). The Legislature could have limited the protection provided by the TCPA to the exercise of free speech relating to participation in government, but did not do so. Because the statutory definition of issues representing a "matter of public concern" is not ambiguous, we must enforce it as written. *TGS-NOPEC Geophysical Co.*, 340 S.W.3d at 439. Accordingly, we conclude the BBB's business review of the BH DFW that contained the "F" rating was a communication relating to an issue of public concern and was an exercise of the BBB's right to free speech as defined by the TCPA. *See Avila v. Larrea*, 394 S.W.3d 646, 657 (Tex. App.—Dallas 2012, pet. filed) (applying TCPA to defamation claim brought by attorney against television station and reporter); *Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, No. 01-12-00581-CV, 2013 WL 1867104, at *7 (Tex. App.—Houston [1st Dist.] May 2, 2013, no pet. h.) (applying TCPA to claims for defamation, business disparagement, and tortious interference with contract against newspaper and source for information contained in newspaper articles).

BH DFW next asserts the BBB failed to establish that the business review, including the "F" rating, was not exempt from the TCPA as commercial speech under section 27.010(b). Generally, "[t]he burden of proving a statutory exception rests on the party seeking the benefit from the exception." *City of Houston v. Jones*, 679 S.W.2d 557, 559 (Tex. App.—Houston [14th Dist.] 1984, no writ) (citing *Franklin v. Pietzsch*, 334 S.W.2d 214, 219–20 (Tex. Civ. App.—

–13–

Dallas 1960, writ ref'd n.r.e.)); *see also Peachtree Constr., Ltd. v. Head*, No. 07-08-00020-CV, 2009 WL 606720, at *3 (Tex. App.—Amarillo Mar. 10, 2009, no pet.) (mem. op.). Therefore, after the BBB established that the business review, including the "F" rating, fell within the exercise of free speech as defined by the TCPA, BH DFW had the burden to establish the communication was exempt from the statute. *See Newspaper Holdings, Inc.*, 2013 WL 1867104, at *12 (concluding plaintiff had burden to show commercial speech exception under TCPA applied to suit against defendant).

As relevant to this appeal, the TCPA does not apply to a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods or services or a commercial transaction in which the intended audience is an actual or potential buyer or customer. TEX. CIV. PRAC. & REM. CODE ANN. § 27.010(b). BH DFW argues the exemption applies because (1) the BBB was primarily engaged in the business of selling accreditation services; (2) the legal action arose because of a commercial transaction, the fee paid by BH DFW to the BBB; and (3) the intended audience was an actual or potential customer of both BH DFW and the BBB. However, BH DFW offered no evidence the BBB's business review, including the "F" rating, arose out of the designation of BH DFW as an accredited business, and the BBB offered evidence that it publishes business reviews of both accredited and non-accredited businesses. Further, the BBB offered evidence that the intended audience of the business review was the general public, not an entity seeking business accreditation from the BBB. We conclude BH DFW failed to establish the exemption in section 27.010(b) of the civil practice and remedies code applied to the BBB's business review of BH DFW.

*No Evidence of a Contract*

Because the BBB established that the business review fell within the scope of the TCPA, BH DFW had the burden of establishing by clear and specific evidence a prima facie case for each essential element of its claim. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c). The TCPA provides no guidance as to the quantum of proof necessary to constitute clear and specific evidence of a prima facie case for each essential element of a claim. BH DFW asserts it was required only to meet "an extremely light evidentiary burden, *i.e.*, the level of evidence which is sufficient to show the existence of a valid cause of action if all testimony to the contrary is disregarded." BH DFW's proffered standard appears to conflict with the statute's requirement that the trial court "shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." *Id.* § 27.006(a). However, we need not consider in this case the quantum of proof necessary to constitute clear and specific evidence of a prima facie case for each essential element of a claim because BH DFW failed to offer any evidence of the existence of its alleged contract with the BBB.

The elements of a breach of contract cause of action are: (a) a valid contract; (b) the plaintiff performed or tendered performance; (c) the defendant breached the contract; and (d) the plaintiff was damaged as a result of that breach. *Thornton v. AT&T Adver., L.P.*, 390 S.W.3d 702, 707 (Tex. App.—Dallas 2012, no pet.). To be enforceable, a contract must define its essential terms with sufficient detail to allow a court to determine the obligations of the parties. *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992); *Sadeghi v. Gang*, 270 S.W.3d 773, 776 (Tex. App.—Dallas 2008, no pet.). "To create an enforceable contract, the minds of the parties must meet with respect to the subject matter of the agreement and all its essential terms." *In re C.H.C.*, No. 05-10-01375-CV, 2013 WL 600204, at *9 (Tex. App.— Dallas, Jan. 3, 2013, no pet. h.) (quoting *Principal Life Ins. Co. v. Revalen Dev., LLC*, 358

–15–

S.W.3d 451, 455 (Tex. App.—Dallas 2012, pet. denied)). "The parties must agree to the same thing, in the same sense, at the same time." *Principal Life Ins. Co.*, 358 S.W.3d at 455.

On appeal, BH DFW's entire argument about whether it provided clear and specific evidence of the existence of a contract between itself and the BBB is:

> As pointed out in its Response to the Motion to Dismiss, [BH DFW] submitted competent evidence by affidavit which provided clear and specific factual statements, establishing its prima facie case that the [BBB] breached its agreement with [BH DFW].

Although we question whether BH DFW has adequately briefed its contention that a contract existed between it and the BBB, we have reviewed its response and its sur-reply to the BBB's motion to dismiss that were filed in the trial court. In its response, BH DFW submitted the affidavit of Mark Dana, BH DFW's general manager, in which he stated that BH DFW had been an accredited business since 1981, "a privilege for which it paid [the BBB] $1,000 annually." Dana described this as the "Accreditation Contract." In its response, BH DFW argued it had established a prima facie case that a contract existed between the parties because:

> [BH DFW] has submitted evidence that, at the time the present dispute arose in 2010, [BH DFW] had paid the [BBB] $1,000 to be listed as a "BBB Accredited Business," a status it had paid to maintain since 1981. *See* Paragraphs 8-9 of the Affidavit of Christopher Burgess, attached to the Dallas BBB's Motion, which admits that Plaintiff was an accredited BBB business. Finally, see Exhibit B-7, an excerpt from the Dallas BBB website entitled "About BBB Accreditation," which likewise states that "BBB accredited businesses pay a fee for accreditation review/monitoring and for support of BBB services to the public[.]" Accordingly, a valid Accreditation Contract existed between the parties, under which [BH DFW] paid money in return for being given the status of a "BBB Accredited Business."

BH DFW reiterated in its sur-reply in the trial court that "it paid [the BBB] $1,000 to become an Accredited Business, and [the BBB] admits on its website that becoming an Accredited Business requires such a payment." It also, however, raised an additional argument that the BBB's

"website likewise makes clear that to become or remain an Accredited Business, such Business must comply with certain standards formulated and enforced solely by [the BBB]."

BH DFW's main argument in the trial court appears to have been that an "Accreditation Contract" existed under which BH DFW paid $1,000 annually for the "privilege" of being designated an accredited business by the BBB. However, BH DFW did not produce a contract with the BBB. Further, Dana did not state he was employed by BH DFW in 1981 when the alleged contract was entered into and provided no basis for his knowledge of the alleged contract. The portion of the BBB's website relied upon by BH DFW states that "accredited businesses pay a fee for accreditation review/monitoring and for support of BBB services to the public." This statement does not support BH DFW's contention that, in exchange for payment of the annual fee, the BBB was required to designate BH DFW as an accredited business.

Finally, the excerpt from the BBB's website relied upon by BH DFW also indicates that, to be accredited, a business must meet the standards in the Code of Business Practices and complete certain application procedures. BH DFW attached to its response to the motion to dismiss a copy of the BBB's "Code of Business Practices (BBB Accreditation Standards)." These standards provide that, in order to achieve and maintain accredited status, a business must meet and abide by the following principles: (1) build trust, (2) advertise honestly, (3) tell the truth, (4) be transparent, (5) honor promises, (6) be responsive, (7) safeguard privacy, and (8) embody integrity. The principles incorporate a number of specific requirements, including that the business has been operational in the area for at least the most recent twelve months, has fulfilled all licensing and bonding requirements of the applicable jurisdictions, and is free from government action that demonstrates a significant failure to support the BBB's ethical principles in marketplace transactions. These requirements affirmatively demonstrate the BBB does not confer "accredited business" status based solely on the payment of an annual fee.

–17–

BH DFW produced no evidence that, in 1981 when it became an accredited business, there was a meeting of the minds between it and the BBB that, in exchange for payment of an annual fee of $1,000, the BBB would designate BH DFW an accredited business.[4] Accordingly, we conclude BH DFW failed to establish by clear and specific evidence a prima facie case for each element of its claim.

BH DFW also argues that it produced clear and specific evidence of a prima facie case on its request for a temporary injunction. The TCPA applies to a legal action based on, relating to, or in response to a party's exercise of the right of free speech, right to petition, or right of association. TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a). A "legal action" is a "lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief." *Id.* § 27.001(6). The definition of "legal action" in the statute is broad enough to encompass a request for injunctive relief. However, a temporary injunction is a remedy that is available only if a probable right to relief has been established in connection with a cause of action. *See Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002) (to obtain temporary injunction, applicant must plead and prove (1) a cause of action against defendant, (2) probable right to relief sought, and (3) probable, imminent, and irreparable injury in interim); *Alliance Royalties, LLC v. Boothe*, 313 S.W.3d 493, 496 (Tex. App.—Dallas 2010, no pet.). In this case, to be entitled to a temporary injunction, BH DFW was required to establish a probable right to relief on its breach of contract claim against the BBB. Accordingly,

---

[4] Although not relied upon by BH DFW in the trial court to support a prima facie case that a contract existed between the parties, we note the BBB's business review of BH DFW states that "BBB Accreditation was revoked because the business failed to honor its accreditation agreement with BBB." This statement by the BBB could be some evidence of an agreement between the BBB and BH DFW regarding BH DFW's obligations to maintain its accredited status. However, it does not establish the terms of the agreement and is not evidence that the BBB agreed to designate BH DFW as an accredited business in exchange for an annual fee. Further, the business review read as a whole clearly indicates BH DFW failed to comply with the BBB's Code of Advertising. This was not an essential element of the "Accreditation Contract" described by Dana.

BH DFW's right to maintain its request for a temporary injunction was dependent on its establishing through clear and specific evidence a prima facie case for each element of its breach of contract claim. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c). Because BH DFW failed to do so, it also failed to establish a prima facie case that it was entitled to injunctive relief.

Because the TCPA applied to BH DFW's breach of contract claim against the BBB and because BH DFW failed to establish by clear and specific evidence a prima facie case that the alleged contract existed between BH DFW and the BBB, the trial court erred by denying the BBB's motion to dismiss under the TCPA.

### Conclusion

We conclude we have jurisdiction over this interlocutory appeal. Additionally, we resolve the BBB's sole issue in its favor. We reverse the trial court's order, render judgment dismissing this case pursuant to the TCPA, and remand this case to the trial court for further proceedings consistent with section 27.009(a) of the civil practice and remedies code. *See id.* § 27.009(a).


/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE


120587F.P05


–19–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BETTER BUSINESS BUREAU OF METROPOLITAN DALLAS, INC., Appellant

No. 05-12-00587-CV                                V.

BH DFW, INC., Appellee

On Appeal from the 14th Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC-12-00921.
Opinion delivered by Justice Fillmore, Justices Moseley and Myers participating.

In accordance with this Court's opinion of this date, we **REVERSE** the trial court's order denying the Better Business Bureau of Metropolitan Dallas, Inc.'s motion to dismiss, **RENDER** judgment dismissing this case pursuant to the Texas Citizens Participation Act, and **REMAND** this case to the trial court for further proceedings consistent with section 27.009(a) of that act. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(a) (West Supp. 2012).

It is **ORDERED** that appellant Better Business Bureau of Metropolitan Dallas, Inc. recover its costs of this appeal from appellee BH DFW, Inc.

Judgment entered this 15th day of May, 2013.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE