

## IN THE
## TENTH COURT OF APPEALS

### No. 10-17-00346-CV

**ROBERT JAMES, INDIVIDUALLY AND
AS NEXT FRIEND OF BRADEY JAMES,**

                                                                  **Appellant**

 **v.**

**JUSTIN YOUNG, PAUL YOUNG, YOUNG
LIVESTOCK FARMS, LP, AND YOUNG
LIVESTOCK RANCH, LLC,**

                                                                  **Appellees**

From the 82nd District Court
Falls County, Texas
Trial Court No. CV39471

## MEMORANDUM OPINION

In one issue, appellant, Robert James, individually and as next friend of Bradey James, contends that the trial court erred by granting summary judgment in favor of appellees, Justin Young, Paul Young, Young Livestock Farms, LP, and Young Livestock Ranch, LLC. Because we conclude that section 87.003 of the Civil Practice and Remedies Code provides appellees immunity from suit and that no exception to immunity applies,

we affirm the trial court's order granting summary judgment in favor of appellees. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 87.003 (West 2017).

## I.    BACKGROUND

The James family—Robert James, Jolea James, Daniel Prado, and six-year-old Bradey James—and the Young family—Justin Young, Shanda Young, and Addison Young—were good friends. Over the 2014 Fourth-of-July weekend, the families spent time together at the Youngs' ranch. Justin mentioned to Robert that he had some cattle that needed work over the weekend, but his help was not working over the July Fourth weekend. Robert offered to help with the cattle. Because Robert had stated on several occasions that Jolea knew about riding horses, Justin invited the rest of Robert's family to go horseback riding while Robert, Daniel, Justin, and Justin's father, Paul, worked with the cattle.

While Robert, Daniel, Justin, and Paul were working with the cattle, Jolea, Bradey, Shanda, and Addison took the horses for a ride in the pasture. Eventually, the four riders returned, got off the horses, and tied up the horses near where Robert, Daniel, Justin, and Paul were working. At this point, Daniel indicated that he wanted to ride a horse, so he got on one horse, Bradey got on another horse, and the two exited the pen to ride the horses down a gravel road to the diesel tanks on the Youngs' ranch.

Daniel and Bradey rode to the diesel tanks and turned around to return to the rest of the group. When they had traveled about 100 to 150 yards toward the rest of the group,

the horses they were riding, as well as two other horses that were tied up nearby, "started whinnying to each other." The horses Bradey and Daniel were riding sped up and began to run. As noted by Daniel in his deposition, "Bradey rocked forward, hit his head on the saddle horn, fell back, rolled—fell off the back, rolled to the side when he fell and hit gravel and then rolled into the grass."

As a result of this incident, Robert sued appellees for negligent handling of animals, alleging that Bradey sustained injuries because:

> 5.2 Defendant(s) allowed Plaintiff Bradey James, who was only six years old at the time, to ride Defendant's horse. Defendant(s) failed to determine Plaintiff's ability to safely manage the horse before allowing him to ride solo.
>
> 5.3 Defendant(s) owned, and/or possessed the horse Plaintiff was riding.
>
> 5.4 Defendant(s) owned, and/or possessed the land upon which Plaintiff was riding.
>
> 5.5 Defendant(s) provided the saddle and tack used by Plaintiff Bradey James.
>
> 5.6 Defendant(s) failed to exercise reasonable care to prevent the horse from injuring Plaintiff.

Appellees filed two separate answers to Robert's lawsuit. First, Young Livestock Ranch, LLC and Young Livestock Farms, LP filed an answer generally denying the allegations made by Robert and asserting that neither organization was in existence at the time of the incident. Justin and Paul later filed a joint answer generally denying the allegations made by Robert and asserting, among other things, that: (1) Robert was negligent in permitting

Bradey to ride the horse and that his negligence was the sole proximate cause of any accident; and (2) neither Justin nor Paul were liable for Bradey's injuries under Chapter 87 of the Civil Practice and Remedies Code.

Thereafter, Young Livestock Ranch, LLC and Young Livestock Farms, LP filed joint traditional and no-evidence motions for summary judgment. Justin and Paul also filed joint traditional and no-evidence motions for summary judgment. Ultimately, the trial court granted both joint motions for summary judgment and ordered that Robert take nothing. Robert filed a notice of appeal, indicating that he desired to appeal the trial court's order granting Justin and Paul's traditional and no-evidence motions for summary judgment. Robert does not challenge the trial court's order granting summary judgment in favor of Young Livestock Ranch, LLC and Young Livestock Farms, LP.

## II. STANDARD OF REVIEW

Different standards of review apply to summary judgments granted on no-evidence and traditional grounds. *See* TEX. R. CIV. P. 166a(c), (i). A no-evidence summary judgment is equivalent to a pre-trial directed verdict, and we apply the same legal sufficiency standard on review. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). Once an appropriate no-evidence motion for summary judgment is filed, the non-movant, here Robert, must produce summary judgment evidence raising a genuine issue of material fact to defeat the summary judgment. *See* TEX. R. CIV. P. 166a(i). "A genuine issue of material fact exists if more than a scintilla of evidence establishing the existence

of the challenged element is produced." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). We do not consider any evidence presented by the movant unless it creates a fact question. *Binur v. Jacobo*, 135 S.W.3d 646, 651 (Tex. 2004).

More than a scintilla of evidence exists when the evidence "raises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Id.* (citing *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex. 1994)). In determining whether the non-movant has met his burden, we review the evidence in the light most favorable to the non-movant, crediting such evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Tamez*, 206 S.W.3d at 582; *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

In contrast, we review the trial court's grant of a traditional motion for summary judgment de novo. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). When reviewing a traditional motion for summary judgment, we must determine whether the movant met its burden to establish that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). The movant bears the burden of proof in a traditional motion for summary judgment, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *See Grant*, 73 S.W.3d at 215. We take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor.

*Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). We will affirm a traditional summary judgment only if the record establishes that the movant has conclusively proved its defense as a matter of law or if the movant has negated at least one essential element of the plaintiff's cause of action. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004); *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997).

When the trial court's judgment does not specify which of several grounds proposed was dispositive, we affirm on any ground offered that has merit and was preserved for review. *See Joe v. Two Thirty Nine J.V.*, 145 S.W.3d 150, 157 (Tex. 2004). Moreover, when a party moves for summary judgment under both rules 166a(c) and 166a(i), "[we] first review the trial court's summary judgment under the standards of rule 166a(i)." *Ridgway*, 135 S.W.3d at 600.

## III. ANALYSIS

In his sole issue on appeal, Robert argues that the exception found in section 87.004(2) of the Civil Practice and Remedies Code applies in a negligent-handling-of-animals claim when the horse owner, even with parental consent, allowed a six-year-old child to ride a horse without adult supervision while knowing that the child was too small and inexperienced to handle the horse and that it was dangerous to do so. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 87.004(2) (West 2017).

"The Texas Equine Activity Limitation of Liability Act [the Act] limits liability for inherent risks of equine activity." *Loftin v. Lee*, 341 S.W.3d 352, 354 (Tex. 2011). The Act is codified in Chapter 87 of the Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 87.001-.005 (West 2017). Of particular note, section 87.003 provides the following, in relevant part:

> Except as provided by Section 87.004, any person, including a farm animal activity sponsor, farm animal professional, livestock producer, livestock show participant, or livestock show sponsor, is not liable for property damage or damages arising from the personal injury or death of a participant in a farm animal activity or livestock show if the property damage, injury, or death results from the dangers or conditions that are an inherent risk of a farm animal activity or the showing of an animal on a competitive basis in a livestock show, including:
>
> (1) the propensity of a farm animal or livestock animal to behave in ways that may result in personal injury or death to a person on or around it;
>
> (2) the unpredictability of a farm animal's or livestock animal's reaction to sound, a sudden movement, or an unfamiliar object, person, or other animal;
>
> . . .
>
> (5) the potential of a participant to act in a negligent manner that may contribute to injury to the participant or another, including failing to maintain control over a farm animal or livestock animal or not acting within the participant's ability.

*Id.* § 87.003(1)-(2), (5).[1]  "The statutory text reflects an expansive view of 'inherent risk.'"

*Loftin*, 341 S.W.3d at 356; *see Young v. McKim*, 373 S.W.3d 776, 780 (Tex. App.—Houston

[14th Dist.] 2012, pet. denied).

Once a defendant shows that section 87.003 is applicable and limits liability, the

plaintiff must prove that an exception to section 87.003 applies.  *See id.* § 87.004; *Better Bus.*

*Bureau of Metro. Dallas v. BH DFW, Inc.*, 402 S.W.3d 299, 309 (Tex. App.—Dallas 2013, pet.

denied) ("Generally, the burden of proving a statutory exception rests on the party

seeking the benefit from the exception." (internal citations & quotations omitted)); *see also*

*Hilz v. Riedel*, No. 02-11-00288-CV, 2012 Tex. App. LEXIS 4736, at **7-8 (Tex. App.—Fort

Worth June 14, 2012, pet. denied) (mem. op.).  Section 87.004 outlines several exceptions

to section 87.003.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 87.004.  In this case, Robert

concedes that section 87.003 applies in this matter; however, in response, he relies on the

following exception outlined in section 87.004(2), which provides that a person is liable

for damages arising from personal injury or death caused by a participant in an equine

activity if:

> the person provided the equine or livestock animal and the person did not make
> a reasonable and prudent effort to determine the ability of the participant to

---

[1] Section 87.001(1) defines engaging in a farm animal activity as "riding, handling . . . or assisting a participant or sponsor with a farm animal." TEX. CIV. PRAC. & REM. CODE ANN. § 87.001(1) (West 2017).  A farm animal activity includes "riding, inspecting, evaluating, handling, loading, or unloading a farm animal belonging to another . . . ."  *Id.* § 87.001(3)(D).  Moreover, a horse is considered an equine animal, which is included in the definition of a farm animal.  *Id.* § 87.001(2)-(2-a).  And finally, for purposes of this matter, a "'[p]articipant' means . . . with respect to a farm animal activity, a person who engages in the activity, without regard to whether the person is an amateur or professional or whether the person pays for the activity or participates in the activity for free."  *Id.* § 87.001(9)(A).

engage safely in the equine activity or livestock show and determine the ability of the participant to safely manage the equine or livestock animal, taking into account the participant's representations of ability . . . .

*Id.* § 87.004(2); *see, e.g., Hilz*, 2012 Tex. App. LEXIS 4736, at **7-8.

In *Loftin*, the Texas Supreme Court addressed the section 87.004(2) exception that Robert relies on in this case—the purported failure to inquire into a rider's ability. *See generally* 341 S.W.3d at 354-60. In that case, "Lee decided to go horseback riding with her friend, Terri Loftin, at Loftin's East Texas home." *Id.* at 354. "Loftin paired Lee with a twelve-year-old gelding named 'Smash' that Loftin had bought for her daughter to ride in competitive barrel racing. To Lee, the horse seemed calm, gentle, and not at all dangerous." *Id.* After an hour of riding, "they came to a wooded, boggy area" that neither rider avoided. *Id.* "A vine touched the flank of Lee's horse, and already spooked by the mud, the horse bolted, as horses will. Lee fell, fracturing a vertebra." *Id.* at 355. Lee sued for negligence, and the trial court ultimately granted summary judgment in favor of Loftin, holding that the Act barred Lee's claims. *Id.*

After finding that Lee's injuries were caused by the inherent risk of horseback riding, the *Loftin* Court held that the section 87.004(2) exception "applies only when the failure to make the required determination is itself the cause of the damage." *Id.* at 359. In response to Lee's argument that Loftin should have done more to determine her riding ability, the *Loftin* Court pointed out that Loftin saw Lee mount her horse with no problems. *Id.* Given this, the *Loftin* Court noted that "section 87.004(2) does not require

a formal, searching inquiry" and concluded that Loftin made a reasonable and prudent effort to determine Lee's ability to ride. *Id.*

Here, a review of the record reveals that Robert did not provide any summary-judgment evidence to prove that Justin and Paul failed to make appropriate efforts to determine Bradey's riding ability or that Justin and Paul's purported failure to sufficiently inquire into Bradey's riding ability was itself the cause of the accident. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 87.004(2); *BH DFW, Inc.*, 402 S.W.3d at 309; *see also Hilz*, 2012 Tex. App. LEXIS 4736, at **7-8.

In any event, Robert mentions the *Hilz* opinion from the Fort Worth Court of Appeals in arguing that he created a material fact issue as to the section 87.004(2) exception that precluded summary judgment. *See generally* 2012 Tex. App. LEXIS 4736, at **1-16. In *Hilz*, Ciarra's father expressly stated that he did not want thirteen-year-old Ciarra riding a horse outside of the pen. *Id.* at **9-10. However,

> [d]espite Greg's [Ciarra's father] alleged express directive, Richard [the horse owner] (a) opted to perform an independent evaluation of Ciarra's ability to safely ride outside of the pen, (b) substituted his opinion of Ciarra's abilities for Greg's opinion about Greg's own daughter's ability to safely ride outside of the pen, and (c) countermanded Greg's instruction to limit Ciarra's riding to inside of the pen. We hold that under these facts— where Richard purportedly acted directly contrary to Greg's express instruction that Ciarra was not permitted to ride outside of the pen— Appellants raised a genuine issue of material fact regarding whether Richard made a reasonable and prudent effort to determine Ciarra's ability to safely ride and manage Logan [the horse].

*Id.* at *10.

We find the fact scenario in the instant case to be distinguishable from *Hilz*. In particular, Robert and Jolea consented to Bradey riding the horse. Jolea recounted that she was knowledgeable of Bradey's riding abilities and that he was good enough to ride a horse by himself, as he had done before. Moreover, unlike *Hilz*, neither Robert nor Jolea gave any directive about where or how Bradey should ride the horse, other than Bradey should not run his horse. The fact that Bradey's horse eventually ran is due to the nature of horses, *see Loftin*, 341 S.W.3d at 355, not due to the negligence of Justin and Paul. Nevertheless, there is no evidence that Justin and Paul countermanded any directive of Bradey's parents. Therefore, we do not find the facts in *Hilz* to be persuasive in this case.

Based on the foregoing, we cannot say that Robert produced evidence that created a material fact issue as to the section 87.004(2) exception—that Justin and Paul failed to inquire into Bradey's ability to ride horses. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 87.004(2); *BH DFW, Inc.*, 402 S.W.3d at 309; *see also Hilz*, 2012 Tex. App. LEXIS 4736, at **7-8. As such, section 87.003's limitation-on-liability provisions protect Justin and Paul from liability in this case. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 87.003; *see also Loftin*, 341 S.W.3d at 356. Accordingly, applying the appropriate summary-judgment standards, we cannot say that the trial court erred in granting summary judgment in favor of Justin and Paul. We overrule Robert's sole issue on appeal.

## IV. CONCLUSION

We affirm the judgment of the trial court.

AL SCOGGINS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
*(Chief Justice Gray concurring and dissenting)
Affirmed
Opinion delivered and filed April 4, 2018
[CV06]

