**Opinion issued August 20, 2019**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-18-00846-CV

————————————

**DAVID GORDON SCHMIDT D/B/A ABC BONDING COMPANY AND GREENBRIER EQUITIES, LLC, Appellants**

**V.**

**BRENDA CRAWFORD, CARLOS PEREZ, ANTHONY WILLIAMS, ANNIE J. BUTLER, ANTHONY FRANCO, AMBRIA FIKE, DEBRA JOHNSON, VICTORIA WELLS, MILDRED ENGLISH, OTTIS WILLIAMS, RANDY L. LASTER, PABLE MURILLO, EMMA MURILLO, CRAIG COOPER, NELSON MARTIN ARMSTRONG, MAZEN BREIR, BENITO MARTINEZ, TANYA PEDROZA, SERGIO PEDROZA, CAROLYN ETHERIDGE, LOUISE SEALS, TERRY MOORE, MARIA RAMIREZ, PETE GARCIA, DENISE BALDWIN, WILLIAM T. ETHERTON, PATRICIA ETHERTON, SHARON WILLIAMS, HELEODORA CRUZ, HATTIE HEMPHILL, AGUSTINA ROBERTS, LOUIS ROBERTS, EMILY JOHNSON, IRIS EDITH SEGUNDO, JOANNA LOAEZA, KEVIN WILLIAMS, RITA WILLIAMS, YOLANDA CARRIERE, ANTHONY CITTI, JUAN CISNEROS, BRANDY JOHNSON, JOHN GHOLSTON, ANSON FURMAN, IVIE BELL, LAURA DIAZ, DARLENE ALEJANDRO, JESSE DELEON, CYNTHIA DELEON, JESUS VEGA, BEVERLY VEGA, RAY PERFECTO,  BRIDGET NWOKO, NEMIAH CLARK, EARLEAN WILLIAMS, LAKESHEA CLARK, PETE**

GONZALES, PAT LEE, MARY VICTORIAN, TIFFANY JOHNSON, ELIAS GAMINO, TIFFANY CHENIER, MURALINE PETER, VICTOR REYES, VERONICA SMITH, JIMMIE ENGLETT, VELVET HILTON, STEPHEN LACY, LEROY VANTERPOOL, PATRICIA WESLEY, SAMMIE L. ABRAHAM, EDITH M. ABRAHAM, BRENDA BROWN, JESUS SILVESTRE, FELICITA AGUILAR, GABINO SALAZAR, JOSEFINA M. NOWLIN, SANDRA DORRON, JESUS VELAZQUEZ, BONNIE CEPHUS, JOSEPHINE ROCHA, LEON JACOBSON, LINDA JACOBSON, OLIVIA SIMS, CONSTANCE GAY, ENSLEY CLINTON, LLEWEL WALTERS, MAURO REYNERIO FERNANDEZ CRUZ, ANTHONY THOMPSON, JUAN CARLOS RIOS RAMIREZ, PHILLIP C. CLARK, BEATRICE PENA, CAROL ASKEW, BRIAN CORMIER, STEVEN CRUZ, LEROY WELLS, HAROLD KINNARD, PLUSHATTE DAVIS, DEIDRE DOBBINS, DAVID SPAULDING, MICHAEL KOSSA, DIANA KOSAS, SERAFIN LUNA, DEBORAH BERRYHILL, O'KEEFE ALLEN, CHRISTOPHER P. VANA, SR., GRACE HAMILTON, BELINDA SPENCER, RENORA RIGGINS, IVONNE JACKSON, EDITH ORDONEZ, WILBER ORDONEZ, TESSIE LYNCH, KATHERINE SANDERS, CHARLES MOURNING, ILIANA PEREZ, TIBURCIA ZAYALA, CHRISTOPHER GREEN, DONALD SHELTON, DONALD CREDEUR, AVIS BATTLE, GRACE PHILLIPS, DAROLYN LEWIS, RAYMOND LEWIS, JR., MICHAEL MILLER, ESTHER DOUBLIN, MARCOS ORTIZ, ROBERT SANCHEZ, ROSALINDA SANCHEZ, TIFFANY SHANNON, ALTHA DAVIS, HERMAN DAVIS, NELSON HEBERT, MELVIN HERRERA, JUANITA CANO, PATRICE BOYCE, EDSON DRONBERGER, CHARLOTTE WYNN, JACQUELINE HILL, ATANACIO RUIZ, ELOISA RUIZ, ROBERTO HERNANDEZ, CLEMENTINA HERNANDEZ, JIM SILVA, LUZ BATALLA, ISMAEL MEDINA, HORTENCIA RODRIGUEZ, ALFRED WATSON, JERRY ESCALANTE, LLOYD CASTILOW, LUIS PENA, CAREY MURRAY, LUZ WILDMAN, CARL EARL, ISMAEL AVELLANEDA, KENDALIA DAVIS, GAIL FRITZ, LEE CARTWRIGHT, ORFILIA MIRANDA, JAINELL LETRYCE VELAZQUEZ BUTLER, COURTNEY MITCHELL, TRAVIS WATERS, DEBBIE WATERS, ANTHONY NORRIS, SHARON A. NORRIS, ADELMIRA SALINAS, SARAH LANDRY, GLORIA GARCIA, JOEL ZAMARRIPA, GERARDO ROMO, PHILLIP ROSS, LAKEISHA ROSS, EARLINE DURANT WATKINS, GERARDO MARQUEZ, NILZA RODRIGUEZ, JANNETTE BROWN, VICTOR H. ESTRADA, BLANCA A. ESTRADA, ANNE CLARE, JAMES CLARE, CHARLENE TALBOTT, MARIA VELEZ, GREG HILLIGIEST, RANDY WILSON, SAUL

AGUILERA, HARLENE BRADY, MARY FLOWERS, JIMMIE SMITH, BETTY R. SMITH, CYNTHIA JENKINS, CLARENCE MCDADE, CHARLES O. MCDONALD, LARS WESTERBERG, ETHEL O'QUINN, JEFFREY GLOVER, KATRINA GLOVER, LAURA LIGGETT, BRENDA TRUSSEL, DALE TRUSSELL, CECELIA ROSE, VANESSA BOURDA, FRANCISCO CAMPOS, CONNIE CAMPOS, SAMMY J. COLLINS, FELICIA BOWMAN, KENDALL WILKINS, TYRONSA WILKINS, ANDREW TAYLOR, MARQUE JOHNSON, BEVERLY HENSLEY, YVONNEYA BROWN, COURTNEY HERNANDEZ, ALBERT ROWAN, TONI OWENS, JIMMY KIRKENDOLL, JOAN L. KIRKENDOLL, MARY ANN EDJEREN, THELMA HOUSLEY, KENNETH JOHNSON, JUDITH ANN WALKER, LESLIE BROWN, DEBORAH EATON, STUART WILLETT, JOSE TORRES, DIANA SALINAS, ERSKINE VANDERBILT, CAROLINE TUNSEL, CATHY JONES, GAIL UDOSEN, REGINA FULTON, HECTOR REYES, LUCIO TORRES, JR., ERNESTO LARA, JACKIE THORNTON, ALFREDO DIMAS, NANCY TAYLOR, REGINALD COLE, CATHLYN COLE, GERALD SMITH FOR THE ESTATE OF EARNEST D. SMITH, FAUCINDA VENCES, THUYVI VINH, MAIDA KHATCHIKIAN, CARL EARL, TROY KING, DIANA ROMERO, SANDRA PYLE, GARY DIAL, MARIA MENDEZ, ANTHONY HARRIS, KEENA HARRIS, KATHERINE STEWART, MARY CURRIE, SIVERAND STERLING, JR., LARRY TANKERSLEY, LESLIE JONES, GONZALO PENA, JOHN LONG, BEVERLY LONG, TERRY RANDLE, AND FELICIA FRANK, Appellees**

---

**On Appeal from the 55th District Court**
**Harris County, Texas**
**Trial Court Case No. 2018-31381**

---

## O P I N I O N

Hundreds of plaintiffs sued David Gordon Schmidt, doing business as ABC Bonding Company, and Greenbrier Equities, LLC, contending that Schmidt and Greenbrier filed illegal liens on the plaintiffs' homesteads. Schmidt and Greenbrier

moved to dismiss the plaintiffs' claims under the Citizens Participation Act. The trial court denied the motion on the ground that the Act did not apply to the plaintiffs' claims. We affirm in part, reverse in part, and remand for further proceedings.

## BACKGROUND

The plaintiffs allege multiple causes of action. The gravamen of their claims is that Schmidt and Greenbrier had the plaintiffs sign deeds of trust as to their homes as security for bail bond loans, fraudulently altered these deeds to inflate the amount of indebtedness, and later filed the deeds in Harris County's real property records, thereby creating illegal liens on the plaintiffs' homesteads. Among other relief, the plaintiffs sought statutory damages of at least $10,000 per illegal lien. *See* TEX. CIV. PRAC. & REM. CODE §§ 12.001–.007. They also sought to quiet title and a declaration that the liens are invalid because they violate various provisions of article XVI, section 50 of the Texas Constitution.

Schmidt and Greenbrier filed general denials. They also moved to dismiss the suit under the Citizens Participation Act. *See* TEX. CIV. PRAC. & REM. CODE §§ 27.001–.011. In their motion, Schmidt and Greenbrier stated that the plaintiffs represented in the deeds of trust they signed that the homes they pledged as security were not homesteads. Schmidt and Greenbrier contended that the plaintiffs' claims should be dismissed under the Act because the claims were based on, related to, or were made in response to Schmidt and Greenbrier's exercise of their right to free

4

speech or right to petition—specifically, the filing of the deeds of trust in Harris County's real property records.

The trial court denied the motion to dismiss. The court reasoned:

> The Plaintiffs' claims do not impact a matter of public concern as defined in CPRC 27.001(7) simply because they relate to public filings, or because those filings may be "false." Imagine the havoc if every routine public filing was "a matter of public concern" simply because it was a public filing. Further, if filing suit under Chapter 12 of the CPRC implicates the anti-SLAPP statute, then Chapter 12 is essentially abrogated.

## DISCUSSION

Schmidt and Greenbrier contend that the trial court erred in denying their motion to dismiss under the Act. The plaintiffs respond with three counterarguments. First, they argue that their claims fall outside the scope of the Act because their claims are not based on, related to, or made in response to Schmidt and Greenbrier's exercise of their right to free speech or right to petition. Second, they contend that even if their claims did come within the scope of the Act, their claims come within a statutory exemption for commercial speech. Third, the plaintiffs contend that application of the Act to their claims abrogates their rights under article XVI, section 50 of the Texas Constitution, which governs homestead liens.

### *Standard of Review and Applicable Law*

We review de novo a trial court's denial of a motion to dismiss under the Citizens Participation Act. *Holcomb v. Waller Cty.*, 546 S.W.3d 833, 839 (Tex.

5

App.—Houston [1st Dist.] 2018, pet. denied). We likewise interpret the Act and decide whether it applies to a suit de novo. *See Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018); *Better Bus. Bureau of Metro. Houston v. John Moore Servs.*, 500 S.W.3d 26, 39 (Tex. App.—Houston [1st Dist.] 2016, pet. denied).

In assessing whether a suit or challenged claim comes within the Act's scope, we rely on the Act's language, interpreting it as a whole rather than reading its individual provisions in isolation from one another. *Youngkin*, 546 S.W.3d at 680. We interpret the Act according to the plain, common meaning of its words, unless a contrary purpose is evident from the context or a plain reading of its text leads to absurd results. *Id.* We cannot judicially amend the Act by imposing requirements that the Act does not or by narrowing its scope contrary to its terms. *Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 337 (Tex. 2017); *see ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 899 (Tex. 2017) (per curiam) (court presumes that Legislature purposely omitted words that are not included in Act). Nor can we substitute the words of the Act to give effect to what we think the Act should say. *ExxonMobil*, 512 S.W.3d at 901.

The Act directs us to liberally interpret its provisions to fully effectuate its purpose, which "is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a

person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE §§ 27.002, 27.011(b). To accomplish this purpose, the Act provides a summary procedure in which a party may move for dismissal on the basis that the claims made against it are based on, relate to, or are in response to the party's exercise of the right of free speech, right to petition, or right of association. TEX. CIV. PRAC. & REM. CODE § 27.003(a); *see In re Lipsky*, 460 S.W.3d 579, 589–90 (Tex. 2015). This summary procedure requires a trial court to dismiss a suit, or particular claims within a suit, that demonstrably implicate these rights, unless the non-moving party can at the threshold make a prima facie showing that its claims have merit. *Sullivan v. Abraham*, 488 S.W.3d 294, 295 (Tex. 2016).

A motion to dismiss made under the Act generally entails a three-step analysis. *Youngkin*, 546 S.W.3d at 679. The movant first must prove by a preponderance of the evidence that the challenged claims are based on, relate to, or are in response to its exercise of the right of free speech, right to petition, or right of association. TEX. CIV. PRAC. & REM. CODE § 27.005(b). The non-movant's pleading is the best evidence of the nature of its claims. *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017). When it is clear from the non-movant's pleadings that the claims are covered by the Act, the movant need not show more. *Adams v. Starside Custom Bldrs.*, 547 S.W.3d 890, 897 (Tex. 2018).

The Act defines the rights of free speech, petition, and free association. TEX. CIV. PRAC. & REM. CODE § 27.001(2)–(4). We are bound by these statutory definitions. *Youngkin*, 546 S.W.3d at 680. Relevant to this appeal, the exercise of free-speech rights is defined as "a communication made in connection with a matter of public concern." TEX. CIV. PRAC. & REM. CODE § 27.001(3). Communications include statements or documents made or submitted in any form or medium. *Id.* § 27.001(1). Matters of public concern include issues relating to health or safety; environmental, economic, or community well-being; the government, a public official or figure; or a good, product, or service in the marketplace. *Id.* § 27.001(7). Taken together, these statutory definitions safeguard an expansive right to free speech. *See Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam) (Act "broadly defines" free speech); *see also Adams*, 547 S.W.3d at 896 (Act's list of matters of public concern is non-exclusive).

If the movant carries its burden by showing that the challenged claims are based on, relate to, or are in response to the exercise of its rights to speak, petition, or associate, the trial court must dismiss the claims unless the non-movant makes by clear and specific evidence a prima facie case for each element of the challenged claims. TEX. CIV. PRAC. & REM. CODE § 27.005(c); *Youngkin*, 546 S.W.3d at 679. A prima facie case is the minimum evidence necessary to support a rational inference that a factual allegation is true; in other words, a prima facie case requires the non-

movant to come forward with evidence that, if uncontradicted, is legally sufficient to establish that a claim is true. *S & S Emergency Training Sols. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018). Mere notice pleading is not sufficient to satisfy the prima facie standard. *Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017) (per curiam).

If the non-movant makes a prima facie case in support of the challenged claims, the burden then shifts back to the movant to prove by a preponderance of the evidence each element of a valid defense to these claims. TEX. CIV. PRAC. & REM. CODE § 27.005(d); *Youngkin*, 546 S.W.3d at 679–80. If the movant carries this burden, the trial court must dismiss the claims. *Youngkin*, 546 S.W.3d at 681.

*Analysis*

**A. Schmidt and Greenbrier did not waive their arguments under the Citizens Participation Act as to any of the plaintiffs' claims.**

The plaintiffs initially contend that Schmidt and Greenbrier waived the right to seek dismissal of the plaintiffs' claims to quiet title and for declaratory judgment by not separately addressing these claims in their appellate brief. We disagree.

In the trial court, Schmidt and Greenbrier moved to dismiss the entire suit, and they appeal from the trial court's denial of their motion. The same allegations underlie all of the plaintiffs' claims. Assuming that the Citizens Participation Act applies, the plaintiffs have not explained how the Act could apply to some of their claims but not others.

9

Thus, we reject the plaintiffs' waiver argument. *See* TEX. R. APP. P. 38.1(f) (statement of issue or point in brief covers every subsidiary question fairly included); *see also Adams*, 547 S.W.3d at 896–97 (defendant who contended in trial court that it was entitled to dismissal under Act because its speech was on a matter of public concern preserved subsidiary issues for appeal).

**B.    The plaintiffs' claims were made in response to Schmidt and Greenbrier's exercise of their right to free speech, and the plaintiffs have not made a prima facie case in support of their claims.**

**1.    Schmidt and Greenbrier's exercise of the right to free speech**

Schmidt and Greenbrier's filing of the deeds of trust and the resulting liens form the underlying factual basis for all of the plaintiffs' claims. The relief the plaintiffs seek similarly concerns the liens; they seek removal of the liens, recovery of lien payments, and $10,000 in statutory damages per lien. The claims made against Schmidt and Greenbrier therefore are based on, relate to, or are in response to their filing of the deeds of trust and resulting liens. The dispositive question as to whether the plaintiffs' claims come within the Act's scope therefore is whether these filings constitute the exercise of free speech under the Act.

Schmidt and Greenbrier contend that instruments filed in a county's real property records constitute the exercise of free speech because they are "a communication made in connection with a matter of public concern." TEX. CIV. PRAC. & REM. CODE § 27.001(3). These filings are "communications," as that term

10

"includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1). Schmidt and Greenbrier contend that these communications are made in connection with a matter of public concern because they are intended to inform the public of encumbrances affecting the transferability of real property and thus concern goods and services in the marketplace as well as economic or community well-being. *See id.* § 27.001(7)(B), (E) ("matter of public concern" includes issues related to "environmental, economic, or community well-being" or "a good, product, or service in the marketplace"); TEX. PROP. CODE § 13.002(1) (properly recorded instruments provide "notice to all persons of the existence of the instrument").

Schmidt and Greenbrier rely in part on the Fourth Court's application of the Citizens Participation Act to financing statements in *Quintanilla v. West*, 534 S.W.3d 34 (Tex. App.—San Antonio 2017), *rev'd on other grounds*, 573 S.W.3d 237 (Tex. 2019). In that case, the court of appeals held that a defendant's filing of financing statements in the real property records to perfect a security interest fell within the scope of the Act's definition of the exercise of free speech. *Id.* at 37–38. The court thus held that the plaintiff's claims for slander of title and fraudulent liens were subject to dismissal. *See id.* The court reasoned that the financing statements related to real property sellable in the marketplace and therefore qualified as a matter

11

of public concern under subsection (7)(E)'s provision for issues relating to goods in the marketplace. *See id.* at 43–46.

We disagree that the plain, common meaning of "good" is broad enough to embrace real property. "Goods" ordinarily refer to tangible or moveable personal property, as opposed to realty. *See Goods*, NEW OXFORD AMERICAN DICTIONARY (3d ed. 2010) (defining term as "merchandise or possessions"); *Goods*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining term to include tangible or moveable personal property other than money, particularly merchandise, and referring to "goods and services" as an illustration of the term's ordinary usage); *see also Realty*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "realty" or "real property" as "land and anything growing on, attached to, or erected on it"). The Legislature has included real property within the definition of "goods" in at least one other context; under the Deceptive Trade Practices Act, both tangible chattels and real property are "goods." *See* TEX. BUS. & COM. CODE § 17.45(1). But the Deceptive Trade Practices Act is an instance in which the Legislature intentionally and explicitly defined "goods" beyond its ordinary usage. *See Aetna Cas. & Sur. Co. v. Martin Surgical Supply Co.*, 689 S.W.2d 263, 268 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.) (noting that DTPA initially defined "goods" as "tangible chattels" but was later amended to include real property). The Citizens Participation Act, in contrast, does not expand the definition of "good" beyond its ordinary usage, and we cannot judicially amend

12

its language to give the term a more expansive meaning than it ordinarily bears. *See ExxonMobil*, 512 S.W.3d at 901. Thus, we reject *Quintanilla*'s holding that real-property filings relate to goods in the marketplace.

This court has held on different facts that communications affecting the sale or transferability of real property were on a matter of public concern, as they came within subsection (7)(B)'s issues relating to economic or community well-being. *See Schimmel v. McGregor*, 438 S.W.3d 847, 859 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). In *Schimmel*, the plaintiffs, who were trying to sell their hurricane-damaged homes to the city, sued an attorney who represented their homeowners association, alleging that he tortiously interfered with their prospective business relations with the city by making misrepresentations about the proposed sale. *See id.* at 849–50. The attorney filed a motion to dismiss under the Act, which the trial court denied. *Id.* at 851, 854. We reversed the trial court, holding that the attorney's statements related to economic or community well-being and thus were an exercise of free speech covered by the Act. *Id.* at 859. We held that the attorney's statements qualified as speech relating to economic and community well-being because his statements concerned the city's possible purchase of homes within a small subdivision, which allegedly would have lowered the value of neighboring properties and impaired the revenue of the homeowners association. *Id.*

In contrast, the deeds of trust filed by Schmidt and Greenbrier do not have any apparent bearing on economic well-being. The plaintiffs allege that Schmidt and Greenbrier's fraudulent communications—filings in the real property records— affected their own financial well-being—specifically, by subjecting them to double the amount of indebtedness ostensibly owed on the bail bond loans and the corresponding possibility of foreclosure and wrongful eviction for non-payment. But that is not enough to bring Schmidt and Greenbrier's filings in the real property records within subsection (7)(B)'s provision for economic well-being. If it were, then any plaintiff who alleged damages based on another's communications would find their claims swept up by the Act. The common meanings of "economic" are not so all-encompassing as that. *See Economic*, NEW OXFORD AMERICAN DICTIONARY (3d ed. 2010) (defining term as "of or relating to economics or the economy"); *Economics*, NEW OXFORD AMERICAN DICTIONARY (3d ed. 2010) (defining term as "the condition of a region or group as regards material prosperity"); *Economy*, NEW OXFORD AMERICAN DICTIONARY (3d ed. 2010) (defining term as "the wealth and resources of a country or region," especially "in terms of the production and consumption of goods and services"); *see also Economics*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("The social science dealing with the production, distribution, and consumption of goods and services."); *Economy*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("management or administration of the wealth and

14

resources of a community (such as a city, state, or country)" or "sociopolitical organization of a community's wealth and resources").

The plaintiffs, however, do allege that Schmidt and Greenbrier's conduct adversely impacts many people other than themselves. They allege that Schmidt and Greenbrier have engaged in an ongoing scheme to defraud their customers for decades. According to the plaintiffs, the Harris County property records reveal more than 5,300 instances of this fraudulent scheme. They further allege that Schmidt and Greenbrier have foreclosed on some illegal liens and wrongfully evicted some homeowners, not necessarily all of whom are plaintiffs. In other words, the plaintiffs themselves allege that Schmidt and Greenbrier's filings have adversely affected the well-being of Harris County at large or at least the subset of its residents who require bail bond loans. Accordingly, we conclude that subsection (7)(B)'s provision for statements relating to community well-being is satisfied. *See Community*, NEW OXFORD AMERICAN DICTIONARY (3d ed. 2010) ("a group of people living in the same place or having a particular characteristic in common" or "a particular area or place considered together with its inhabitants"); *Community*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("neighborhood, vicinity, or locality" or "society or group of people with similar rights or interests"); *see also Cadena*, 518 S.W.3d at 327 ("If an undefined word used in a statute has multiple and broad definitions, we

15

presume—unless there is clear statutory language to the contrary—that the Legislature intended it to have equally broad applicability.").

We thus hold that the trial court erred in ruling that the plaintiffs' claims were outside the scope of the Act. Because Schmidt and Greenbrier proved by a preponderance of the evidence that their filings were communications made in connection with a matter of public concern, the Act applies to the plaintiffs' claims.

The plaintiffs try to avoid this holding by arguing that the deeds of trust are not communications made by Schmidt and Greenbrier even though they filed them. The plaintiffs reason that because they filled out the deed forms, the deeds are communications made by themselves, not Schmidt and Greenbrier. But the definition of "communication" encompasses both "the making or submitting of" documents. *See* TEX. CIV. PRAC. & REM. CODE § 27.001(1). Whoever made the deeds, the plaintiffs agree that Schmidt and Greenbrier filed them in the county's real property records, which qualifies as submitting them. *See File*, NEW OXFORD AMERICAN DICTIONARY (3d ed. 2010) (defining "file" to include submission of legal documents); *File*, BLACK'S LAW DICTIONARY (11th ed. 2019) (term's meanings include "to deliver a legal document to the court clerk or record custodian for placement into the official record" and "to record or deposit something in an organized retention system or container for preservation and future reference"). Moreover, the plaintiffs complain of material alterations—specifically,

16

misrepresentations as to the loan amounts—that Schmidt and Greenbrier allegedly made to the deeds of trust before filing them in the real property records. These alleged alterations are Schmidt and Greenbrier's speech, not the plaintiffs' speech. We therefore reject the plaintiffs' argument that the communications at issue were not made by the defendants.

## 2. Plaintiffs' failure to make a prima facie case as to their claims

Because the plaintiffs' pleading shows that their claims are based on, related to, or are in response to Schmidt and Greenbrier's exercise of their right to free speech, the burden shifted to the plaintiffs to make by clear and specific evidence a prima facie case in support of each element of their claims. TEX. CIV. PRAC. & REM. CODE § 27.005(c); *Youngkin*, 546 S.W.3d at 679. They did not do so.

In their appellate brief, the plaintiffs implicitly concede that they did not make a prima facie case. They argue that they "can show" and "will show" that their claims have merit by making a prima facie showing. But they did not do so in the trial court. The record is devoid of clear and specific evidence supporting each element of their several claims, and the portion of their brief dedicated to the issue of prima facie evidence contains a single record citation—to their petition. That is not enough, as notice pleading does not make out a prima facie case. *See Bedford*, 520 S.W.3d at 904. Instead of citing clear and specific evidence supporting their claims in their

17

appellate brief, the plaintiffs' devote their argument about prima facie evidence to the legal significance of the proof that they say they eventually will produce.

The plaintiffs have included several documents as attachments to their appellate brief: three bail bonds, respectively purchased by Brenda Crawford, Carlos Perez, and Anthony Williams; three foreclosure notices, respectively sent to Randy Laster, Pablo Murillo, and Altha Davis; and a foreclosure deed relating to a property owned by Earnest Smith. These documents concerning disparate persons cannot be cobbled together to support any one plaintiff's claims; nor would a mere bail bond, foreclosure notice, and foreclosure deed be prima facie evidence of any claim even if these documents all related to the same person or property. Of the hundreds of plaintiffs, not one has submitted an affidavit substantiating his or her claims.

Moreover, Schmidt and Greenbrier have moved to strike the documents attached to the plaintiffs' appellate brief on the basis that they are not in the record. The defendants are correct that submission of documents with an appellate brief does not make them part of the record on appeal and that we cannot consider such documents unless they also are in the record. TEX. R. APP. P. 34.1; *Tex. Windstorm Ins. Ass'n v. Jones*, 512 S.W.3d 545, 552 (Tex. App.—Houston [1st Dist.] 2016, no pet.). Accordingly, even if these documents sufficed to make a prima facie case as to the plaintiffs' claims, we could not credit them. *Tex. Windstorm*, 512 S.W.3d at

552. We deny Schmidt and Greenbrier's motion, however, because the documents in question are not part of the appellate record and thus cannot be stricken from it.

We hold that the plaintiffs have not made a prima facie case supporting each element of their claims. Because Schmidt and Greenbrier have shown that their speech is covered by the Act and the plaintiffs have not responded by making a prima facie showing that their claims have merit, we do not need to consider whether Schmidt and Greenbrier have proved any defenses to the plaintiffs' claims.

**C.      The plaintiffs' claims do not fall within the Citizen Participation Act's exemption for commercial speech, and their claims therefore remain subject to dismissal under the Act.**

The plaintiffs also argue that the Act's exemption for commercial speech applies to Schmidt and Greenbrier's filings. We disagree that the exemption applies.

The Citizens Participation Act does not apply to a suit against a defendant who is "primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, or an insurance product, insurance services, or a commercial transaction in which the intended audience is an actual or potential buyer or customer." TEX. CIV. PRAC. & REM. CODE § 27.010(b). This exemption applies if four elements are met:

(1) the defendant was primarily engaged in the business of selling or leasing goods or services;

(2) the defendant made the communication on which the claim is based in its capacity as a seller or lessor of those goods and services;

19

(3) the communication at issue arose out of a commercial transaction involving the kind of goods or services that the defendant provides; and

(4) the intended audience of the communication was actual or potential customers of the defendant for the defendant's kind of goods or services.

*Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 688 (Tex. 2018) (per curiam). The party asserting the commercial-speech exemption has the burden to prove that the exemption applies to the communications at issue. *Schimmel*, 438 S.W.3d at 857.

Schmidt and Greenbrier's communications—filings made in Harris County's real property records—do not satisfy the fourth element. These filings were made to put the general public on notice that certain properties were subject to liens. *See* TEX. PROP. CODE § 13.002(1). As the plaintiffs acknowledge, "one effect of a lien filed in the property records is to put the entire world on notice of the purported indebtedness and to interfere with any real estate transaction until the lien is released." Thus, the intended audience of Schmidt and Greenbrier's filings was the public at large or potential buyers of the encumbered properties, not Schmidt and Greenbrier's potential or actual customers—persons who have obtained or need to obtain bail bond loans, which makes the commercial-speech exemption inapplicable. *See Better Bus. Bureau of Metro. Houston v. John Moore Servs.*, 441 S.W.3d 345, 354 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (commercial-speech exemption didn't apply, as intended audience was general public, not defendant's potential

20

customers); *Better Bus. Bureau of Metro. Dallas v. BH DFW, Inc.*, 402 S.W.3d 299, 309 (Tex. App.—Dallas 2013, pet. denied) (same).

The plaintiffs, who are the defendants' actual customers, argue that they were the intended audience of the communications. The plaintiffs reason that they were the intended audience because the deeds of trust they signed were used as a means to let them know that their debt was secured by their homestead.

The execution of the deeds of trust, however, is not the gravamen of the plaintiffs' claims. Their claims hinge on Schmidt and Greenbrier's alleged fraudulent alteration of the deeds, the filing of the deeds in the county's real property records, and the resulting liens on the plaintiffs' properties. Moreover, in their petition, the plaintiffs disavow any notion that the defendants used the deeds of trust to communicate with the plaintiffs. The plaintiffs allege that they only recently learned that Schmidt and Greenbrier had filed the deeds. The plaintiffs also state in their petition that they were unaware that they had pledged their homes as security, alleging that they were neither "asked if they wished to use their home as collateral" nor informed that the loan would cloud "the title of their homestead properties." According to the plaintiffs' petition, Schmidt and Greenbrier intended that the plaintiffs, who are "unsophisticated borrowers, simply sign" the deeds of trust based on the defendants' representations about the bail bond loans. Indeed, the plaintiffs

21

allege that they were not even aware that they had signed deeds of trust as part of the loan process.

In conclusion, the allegations of the petition are inconsistent with the plaintiffs' position on appeal that they were the intended audience of Schmidt and Greenbrier's communications. The plaintiffs' petition therefore negates the applicability of commercial-speech exemption. *See Hersh*, 526 S.W.3d at 467–68 (Act's applicability can be ascertained from petition).

Justice Countiss would hold that the plaintiffs are part of the intended audience of Schmidt and Greenbriar's communications. In support, she relies on our decision in *North Cypress Medical Center Operating Co. v. Norvil*, No. 01-18-00582-CV, 2019 WL 2292630 (Tex. App.—Houston [1st Dist.] May 30, 2019, pet. filed), in which we held that the plaintiff was a member of the intended audience of a hospital lien filed against her under Chapter 55 of the Property Code. *See id.* at *4 (relying on *ETX Successor Tyler v. Pridgeon*, 570 S.W.3d 392, 398–99 (Tex. App.—Tyler 2019, no pet.), and *Berry v. ETX Successor Tyler*, No. 12-18-00095-CV, 2019 WL 968528, at *3–4 (Tex. App.—Tyler Feb. 28, 2019, no pet.) (mem. op.)).

*North Cypress*, however, is distinguishable. The result in that case turned on the nature of statutory hospital liens. Chapter 55 creates a lien in favor of hospitals who treat certain persons allegedly injured by the negligence of a third party. *See* TEX. PROP. CODE §§ 55.001–.008. These liens attach to the injured person's claim

22

against the third party, any judgment arising out of a suit against the third party, or a settlement with the third party. *Id.* §§ 55.002(a), 55.003(a). They do not attach to any real property that the injured person owns. *Id.* §§ 55.002(a), 55.005(d)(2). Chapter 55 expressly requires the hospital to give the injured person notice of the lien shortly after it has been recorded. *Id.* § 55.005(a)(1), (d). The injured person's attorney is entitled to access to the hospital's underlying medical records so that he can evaluate the basis for the lien and its amount. *See id.* § 55.008(a); *see also id.* § 55.004 (specifying permissible charges for services subject to lien).

Chapter 55 has several key features that show the injured person is a member of the intended audience of any hospital lien—specifically, its provisions requiring that she receive notice of the lien, allowing her attorney access to the underlying medical records, and limiting the lien's attachment to any claim made against the third party who allegedly injured her as well as any corresponding judgment or settlement. The statute necessarily makes the injured person a member of the hospital lien's intended audience in order to effectuate its purpose, which is to ensure that the hospital gets paid from any funds that she may recover from the third party who allegedly made her medical treatment necessary. *See McAllen Hosps. v. State Farm Cty. Mut. Ins. Co. of Tex.*, 433 S.W.3d 535, 537–38 (Tex. 2014).

Consistent with Chapter 55, the facts in *North Cypress* reflect that the plaintiff was a member of the hospital lien's intended audience. That lawsuit arose out of

23

unsuccessful negotiations between the plaintiff and the hospital as to the amount needed to discharge the lien that ensued after the hospital notified her that the lien had been filed. *See* 2019 WL 2292630, at *1–2. In contrast, the plaintiffs in this suit disclaim notice, alleging that they did not know that the defendants had filed liens and were shocked by the terms of the liens when they became aware of their existence. The record also lacks any evidence of pre-suit negotiations or other communications between the plaintiffs and the defendants akin to those in *North Cypress* that would support a conclusion that the plaintiffs were the intended audience. The plaintiffs allege that they were unaware that they had signed deeds of trust when they sought bail bond loans and could not easily have discovered that they had done so absent a search of the county's property records.

In sum, unlike *North Cypress*, this suit does not involve hospital liens or a statutory framework comparable to Chapter 55 of the Property Code. Nor is the present record comparable to the one in *North Cypress*. The plaintiffs in this suit have pleaded themselves outside the scope of the commercial-speech exemption.

**D.    Application of the Citizens Participation Act to fraudulent-lien claims does not abrogate Chapter 12 of the Civil Practice and Remedies Code but does contravene the Texas Constitution's homestead lien provisions.**

In denying Schmidt and Greenbrier's motion to dismiss, the trial court reasoned that the Act could not apply to the plaintiffs' claims without effectively undoing the statutory scheme imposing civil liability for filing fraudulent liens. *See*

24

TEX. CIV. PRAC. & REM. CODE §§ 12.001–.007. The plaintiffs similarly maintain that if the Act applies to fraudulent liens, then the Texas Constitution's provisions on homestead liens would become a "dead letter." They urge that "illegal and invalid deeds of trust are not protected free speech."

### 1.      Chapter 12

With respect to Chapter 12, the trial court's ruling misapprehends the purpose of the Citizens Participation Act and how the Act operates to achieve its purpose. Like the filing of a fraudulent lien, defamation may result in civil liability. Nevertheless, allegedly defamatory statements may qualify as communications on a matter of public concern and thus come within the Act's ambit. *See Lippincott*, 462 S.W.3d at 509–10. The Act does not abrogate these defamation claims, however; it merely imposes a procedural hurdle—a threshold showing of merit. *See id.* at 510 (defendants had shown that Act applied to defamation suit, thereby requiring plaintiff to prove a prima facie case). Whether communications subject to the Act ultimately prove to be protected free speech therefore is beside the point; the Act does not "only apply to constitutionally guaranteed activities." *Youngkin*, 546 S.W.3d at 681. It purposely casts a wider net to safeguard the rights of speech, petition, and association. *See id.*

That which is true of defamation claims is equally true of the plaintiffs' claims under Chapter 12. In general, statutory claims are just as subject to the Citizens

25

Participation Act as common-law claims. *See D. Magazine Partners v. Rosenthal*, 529 S.W.3d 429, 432, 441–42 (Tex. 2017) (holding that magazine was entitled to award of fees under Act based on dismissal of claims plaintiff made under Deceptive Trade Practices Act and Identity Theft Enforcement and Protection Act). The Act does expressly exclude several statutory causes of action from its scope, but Chapter 12 claims are not excluded. *See* TEX. CIV. PRAC. & REM. CODE § 27.010(c), (d); *see also Serafine v. Blunt*, 466 S.W.3d 352, 388 (Tex. App.—Austin 2015, no pet.) (Pemberton, J., concurring) (Act's exclusion of specific statutory claims reflects legislative intent that Act otherwise apply "to statutory claims to the same extent as other kinds"). Irreconcilable statutory conflicts can render one statute inapplicable in deference to another. *See In re Xerox Corp.*, 555 S.W.3d 518, 536–39 (Tex. 2018) (proportionate liability statute did not apply to suits under Texas Medicaid Fraud Prevention Act because the two statutory schemes conflicted with each other). However, the trial court did not identify any particular conflict between the provisions of Chapter 12 and the Citizens Participation Act and we cannot see one. *See State ex rel. Best v. Harper*, 562 S.W.3d 1, 9–10 (Tex. 2018) (rejecting claim that Act and statute authorizing suit to remove county official from elected office could not both apply to suit because litigant didn't identify and court couldn't discern actual conflict between Act and removal statute). Accordingly, we hold that the Act applies to the plaintiffs' Chapter 12 claims.

## 2. Texas Constitution

The plaintiffs' complaint under the Texas Constitution is a different matter. Article XVI, section 50 of the Texas Constitution strictly limits the types of loans that may be secured by a homestead lien. *Wood v. HSBC Bank USA*, 505 S.W.3d 542, 545 (Tex. 2016). Homestead liens that transgress these strict constitutional limits are invalid. *See* TEX. CONST. art. XVI, § 50(c); *Wood*, 505 S.W.3d at 545, 548–50. Under our constitution, bail bond loans made on the undisputed terms that apply to the credit Schmidt and Greenbrier extended to the plaintiffs are not among the debts that may be secured by a homestead lien. *See* TEX. CONST. art. XVI, § 50(a)(6).

When, as here, an invalid homestead lien clouds title, the homeowner is entitled to bring an equitable action to remove the cloud and quiet title. *See Wood*, 505 S.W.3d at 550; *Ditta v. Conte*, 298 S.W.3d 187, 192 (Tex. 2009). The homeowner likewise is entitled to seek declaratory relief as to the invalidity of the lien. *Kyle v. Strasburger*, 522 S.W.3d 461, 465 (Tex. 2017) (per curiam). In some instances, the lienholder may cure defects that render a homestead lien invalid. *See Wood*, 505 S.W.3d at 548–51 (discussing home-equity loans and liens). But because these bail bond loans categorically cannot be secured by homestead liens under our constitution, cure is not possible. *See* TEX. CONST. art. XVI, § 50(a); *Doody v. Ameriquest Mortg. Co.*, 49 S.W.3d 342, 344–45 (Tex. 2001) (homestead lien "valid

27

only if the loan is one recognized in section 50(a)"). Categorically invalid homestead liens "can never have any effect." *Laster v. First Huntsville Props. Co.*, 826 S.W.2d 125, 130 (Tex. 1991); *Paull & Partners Invs. v. Berry*, 558 S.W.3d 802, 809 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (quoting *Laster*, 826 S.W.2d at 130).

"Section 50(c) starts with the premise that a lien securing a noncompliant loan is never valid." *Wood*, 505 S.W.3d at 549. Thus, even if cure was possible, Schmidt and Greenbrier would bear the burden of proof to show that they had done so because liens that are invalid when made remain invalid until cured. *Id.* Application of the Citizens Participation Act to the plaintiffs' quiet-title and declaratory-judgment claims would reverse this burden by requiring the plaintiffs to produce prima facie evidence supporting these claims first, rather than requiring the lienholders to show that the liens are valid or that they had cured the alleged invalidity. The Act, however, cannot trump the Texas Constitution in this manner. *See Neeley v. W. Orange-Cove Consol. Indep. Sch. Dist.*, 176 S.W.3d 746, 782 (Tex. 2005) (constitutional provisions prohibit conflicting laws); *Salomon v. Lesay*, 369 S.W.3d 540, 556–57 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (if application of statute would abridge constitutional rights, statute must yield). As the Supreme Court has explained, constitutional mandates like Article XVI, section 50 supersede contrary common-law rules. *Wood*, 505 S.W.3d at 549. These mandates also supersede statutes like the Citizens Participation Act. In *Wood*, the Court held that "no statute

28

of limitations applies to cut off a homeowner's right to quiet title to real property encumbered by an invalid lien" because "the constitutional protections" embodied in article XVI, section 50 "do not contemplate such a limitation." *Id.* at 550. Article XVI, section 50 likewise does not contemplate the limitations that the Act would impose on the plaintiffs' claims to quiet title and for declaratory relief.

Because the homestead liens are invalid, dismissal of the plaintiffs' quiet-title and declaratory-relief claims under the Citizens Participation Act would impair the rights guaranteed in article XVI, section 50 of the Texas Constitution. These claims therefore are not subject to dismissal under the Act.

Chief Justice Radack's dissent contends that article XVI, section 50 of the Texas Constitution does not place the plaintiffs' quiet-title and declaratory claims outside the scope of the Act and its requirement that the plaintiffs make a prima facie case. The Constitution and the Act can be reconciled, she posits, because when a plaintiff asserts the invalidity of a lien under article XVI, section 50, the plaintiff still bears the burden of proof to first establish that the real property is the plaintiff's homestead. I think this position is mistaken for two independent reasons.

First, it understates the significance of the Supreme Court's decision in *Wood*. The Court indicated in *Wood* that the starting point in any analysis under section 50(c) is that liens securing noncompliant loans are not valid. *See* 505 S.W.3d at 549.

Second, even if one assumes that the plaintiffs bear the burden of first proving homestead status, the Citizens Participation Act impermissibly impedes their ability to do so. Under the Act, a motion to dismiss must be filed no later than 60 days after service of the petition. TEX. CIV. PRAC. & REM. CODE § 27.003(b). The filing of the motion suspends ordinarily all discovery. *Id.* §§ 27.003(c), 27.006(b). In addition, when required to make a prima facie case, the nonmovant must do so with respect to every essential element of the challenged claims. *Id.* § 27.005(c). Absent the Act, none of this is true. A plaintiff ordinarily is entitled to adequate time for discovery before the defendant may require the plaintiff to support his claims with evidence. *See* TEX. R. CIV. P. 91a.6 (no evidence may be considered by court in ruling on motion to dismiss); TEX. R. CIV. P. 166a(i) (no-evidence summary judgment may only be sought after adequate time for discovery). The plaintiff may seek discovery as to any relevant, non-privileged matter via a wide array of discovery devices during this period. *See* TEX. R. CIV. P. 192.1, 192.3(a). After the expiration of adequate time for discovery, the movant must identify specific elements of the plaintiff's claim for which it asserts there is no supporting evidence. TEX. R. CIV. P. 166a(i). These ordinary procedural rules provide a plaintiff with a reasonable opportunity to assert the invalidity of any lien under article XVI, section 50, and establish homestead status, assuming that the plaintiff is required to do so. The Act, in contrast, deprives a plaintiff of a meaningful opportunity to vindicate this constitutional guarantee.

30

Chief Justice Radack further notes that not only did the plaintiffs fail to make a prima facie showing as to homestead status, Schmidt and Greenbrier secured a written disavowal of homestead status from the plaintiffs. While true, this does not affect the constitutional invalidity of the liens. Even when loan documents contain an express disavowal of homestead status, the resulting liens are invalid if the loan's terms do not pass muster under article XVI, section 50. *See Tex. Land & Loan Co. v. Blalock*, 13 S.W. 12, 13 (Tex. 1890) (constitutionally noncompliant lien invalid notwithstanding express disavowal of homestead status in paperwork); *see also Wood*, 505 S.W.3d at 545 (citing *Blalock* for proposition that constitutionally noncompliant homestead liens historically have been held absolutely void).

## CONCLUSION

Because our analysis as to Schmidt and Greenbrier's exercise of their right to free speech is dispositive of this appeal, we do not reach their alternative arguments about their right to petition. *See* TEX. R. APP. P. 47.1.

We reverse the trial court's order denying Schmidt and Greenbrier's motion to dismiss, except as to the plaintiffs' constitutional quiet-title and declaratory-relief claims; with respect to these claims, we affirm the trial court's order denying dismissal. We remand this cause for further proceedings consistent with our opinion.

Gordon Goodman
Justice

Panel consists of Chief Justice Radack and Justices Goodman and Countiss.

Chief Justice Radack, dissenting in part from the judgment.

Justice Countiss, dissenting in part and concurring in judgment only in part.